IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK COLLINS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| JOHN DOES 1-26, | : | NO: 11-cv-7247 |
| | : | |
| Defendants. | : | |

MEMORANDUM ORDER

AND NOW, this 30th day of December, 2011, upon consideration of Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (Doc. No. 4), it is hereby ORDERED that said Motion (Doc. No. 4) is DENIED.

I.   Factual Background and Procedural History

In this internet copyright infringement action, Plaintiff Patrick Collins, Inc. ("Plaintiff" or "Collins") claims that twenty-six (26) John Doe Defendants used the BitTorrent protocol to infringe Collins' copyrighted work, namely a movie titled "Asa Akira is Insatiable 2." (Doc. No. 1 ¶¶ 1-12). By way of background, BitTorrent is a common peer-to-peer (P2P) file sharing protocol that allows users to distribute large amounts of data over the internet. (Doc. No. 1 ¶ 13). To share files using BitTorrent, a user installs a BitTorrent "Client" (software program) onto his computer, and this Client serves as the user's interface during the process of uploading and downloading data. (Doc. No. 1 ¶¶ 15-17). A user may then upload a new file, e.g., a movie, called an "initial seed," which the Client breaks down into individual "pieces." (Doc. No. 1 ¶¶ 18-20). The BitTorrent protocol allows many users to join a "swarm" of host computers to upload and download different "pieces" of the initial seed file from each other. (Doc. No. 1 ¶

14).  At the end of the process, once a user has downloaded all the pieces of the file, the Client reassembles the pieces into a complete file so the user can, e.g., watch the downloaded movie. (Doc. No. 1 ¶ 34).

Here, Collins hired a forensic investigator to identify the IP addresses associated with BitTorrent file sharing of Collins' original work of authorship, i.e., "Asa Akira is Insatiable 2." (Doc. No. 1 ¶¶ 35, 45).  Utilizing forensic software, the investigator determined that twenty-six (26) users, the John Doe Defendants in this matter, copied the same piece[1] of Collins' work using the BitTorrent protocol.  (Doc. No. 1 ¶¶ 38).  In other words, each Defendant allegedly participated in the same BitTorrent swarm to obtain a copy of Collins' movie, or at least a portion of it.  (Doc. No. 1 ¶¶ 32, 39).  Collins did not authorize or consent to Defendants' copying of the work.  (Doc. No. 1 ¶ 46).  Collins' complaint asserts that Defendants' aforementioned conduct constitutes direct copyright infringement (Count 1), contributory copyright infringement (Count 2), direct trademark infringement (Count 3), and contributory trademark infringement (Count 4).

In the motion presently before us, Plaintiff asks us to authorize Rule 45 subpoenas commanding each John Doe Defendant's internet service provider ("ISP"), here, Verizon Internet Services, Comcast Cable, and RCN Corporation, to provide Plaintiff with the true name, address, telephone number, e-mail address, and Media Access Control ("MAC") address[2] of the individuals associated with the IP addresses identified by Plaintiff's forensic investigator.  (Doc.

---

[1] The identified piece of the file has the unique SHA-1 hash value of B59067555817E071369436EAD2D329D913CB4BCB.  (Doc. No. 1 ¶ 37).

[2] A MAC address is a number that identifies a specific computer.

No. 4). As discussed in detail below, we deny Plaintiff's motion because Plaintiff has not yet registered his copyright for "Asa Akira is Insatiable 2," which is a prerequisite for bringing this copyright infringement suit. See 17 U.S.C. § 411(a).

II.   Legal Analysis

As a general rule, a party may not seek discovery in advance of a Rule 26(f) conference without a court order. See Fed. R. Civ. P. 26(d)(1). Rule 26(b) guides our discretion in determining whether to issue such a discovery order. Specifically, a court "may order discovery of any matter relevant to the subject matter involved in the action" for "good cause." Fed. R. Civ. P. 26(b)(1).

As set forth *supra*, this is an internet copyright infringement case in which Plaintiff seeks leave to subpoena John Doe Defendants' ISPs to ascertain the true identities of the alleged infringers. In cases such as this, courts typically consider "a variety of factors to weigh the need for disclosure against First Amendment interests. These factors include: (1) a concrete showing of a *prima facie* claim of actionable harm, (2) specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) a central need for the subpoenaed information to advance the claim, and (5) the party's expectation of privacy." Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004) (internal citations omitted). Stated differently, no "good cause" exists to subpoena an ISP's records for a subscriber's sensitive personal information (name, address, phone number, e-mail address, and MAC address) unless the moving party persuasively establishes, among other things, a *prima facie* claim of actionable harm, e.g., copyright infringement.

This rule makes good sense, both as a matter of policy and constitutional law. If a

copyright infringement plaintiff cannot even make a *prima facie* showing of actionable harm by the defendants, then we see no good reason to force an ISP to turn over the defendants' identities. Such a rule serves a screening function of sorts, ensuring that courts (and litigants) give due deference to an individual's First Amendment right to disseminate information anonymously, see McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 342 (1995) (holding that the First Amendment protects an author's decision to remain anonymous), and constitutional right to privacy, see Whalen v. Roe, 429 U.S. 589, 598-600 (1977) (noting that right to privacy encompasses "the individual interest in avoiding disclosure of personal matters."). Although not absolute, these rights should not give way without a compelling reason.

Here, Plaintiff's complaint does not allege a viable copyright infringement claim properly before the Court because the work in question, "Asa Akira is Insatiable 2," has not yet been registered with the United States Copyright Office. Under 17 U.S.C. § 411(a), absent certain circumstances not applicable here,[3] one cannot bring a copyright infringement action until the copyright is registered. It follows that "a party may not state a *prima facie* case of copyright infringement where the party does not hold a registered copyright in accordance with 17 U.S.C. § 411(a)." Telebrands Corp. v. Exceptional Prods. Inc., No. 11–CV–2252, 2011 WL 6029402, at *3 (D.N.J. Dec. 5, 2011) (citation omitted).

As Plaintiff's complaint makes clear, Collins has filed an application for copyright registration for the work at issue, but the application is still pending. (Doc. No. 1 ¶¶ 11, 12, 45

---

[3]In particular, "§ 411(a) expressly allows courts to adjudicate infringement claims involving unregistered works in three circumstances: where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused." Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1246 (2010). It appears that none of these exceptions applies here.

("Plaintiff is the owner of the application for the Work, which will ripen into a registration, which contains an original work of authorship.")). In other words, the Copyright Office has neither registered nor refused to register Collins' work. Our independent research of Copyright Office records confirms that the work is not yet registered.[4] Therefore, Plaintiff has not met § 411(a)'s registration requirement, and so has not concretely stated a *prima facie* claim of copyright infringement. See Telebrands, 2011 WL 6029402, at *3. As such, we see no good cause to permit Plaintiff to subpoena twenty-six (26) John Doe Defendants' ISPs to compel the ISPs to reveal the Defendants' identifying personal information.

We recognize that courts have split over the interpretation of § 411(a), with some endorsing an "application" approach in which a copyright infringement plaintiff may rely on his pending copyright application to bring suit, while others take the "registration" approach we delineated above, in which the Copyright Office's issuance of a certificate of registration is a prerequisite to suit. See Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 615-16 (9th Cir. 2010) (cataloging cases and noting circuit split). Indeed, two leading copyright law treatises take opposite sides of this debate. Compare 2-7 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 7.16 (2011) (favoring application approach) with 1 Howard B. Abrams, The Law of Copyright § 10:8.90 (2011) (favoring registration approach). Although the Third Circuit has not definitively resolved the "application" v. "registration" question, the court recently declared that "[a]n action for infringement of a copyright *may not be brought until the copyright is registered.*" Dawes-Lloyd v. Publish Am., LLP, No. 10–3781, 2011 WL 3555427, at *1 (3d Cir.

---

[4] Search conducted in the Copyright Office's online public catalog, http://cocatalog.loc.gov/.

Aug. 12, 2011) (emphasis added). This statement at least suggests that our circuit will take the registration approach.

Additionally, we simply cannot square the application approach with the relevant statutory language, which reads:

> Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights....

17 U.S.C. § 411(a).

Under the application approach, "a complete application satisfies the registration requirement of § 411(a)." Cosmetic Ideas, 606 F.3d at 621. With due respect for those courts that have held otherwise, the language of § 411(a) absolutely forecloses this interpretation. Pursuant to § 411(a), one may bring a copyright infringement suit based on a registered copyright, or if "the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused." If mere submission of a complete copyright application constituted registration under § 411(a), then logic tells us that the Copyright Office could never "refuse" registration of such an application -- registration would be automatic. However, § 411(a) explicitly acknowledges that the Copyright Office may refuse registration of an application submitted in proper form. In other words, adopting the application approach would render the "registration has been refused" language in § 411(a) entirely nonsensical. We decline to gut the statute in this way.

We certainly understand the strong, largely meritorious, policy considerations that weigh in favor of permitting a copyright infringement plaintiff to sue during the pendency of his copyright application.  See Cosmetic Ideas, 606 F.3d at 619-21 (noting that the application approach "avoids unnecessary delay in copyright infringement litigation, which could permit an infringing party to continue to profit from its wrongful acts," "ensures the broad copyright protection that the 1976 Act provided," and "best effectuate[s] the interests of justice and promote[s] judicial economy.") (internal citations omitted).

Of course, other policy considerations cut in the opposite direction, as is typically the case in interpretive debates of this sort.  See Strategy Source, Inc. v. Lee, 233 F. Supp. 2d 1, 4 (D.D.C. 2002) (Copyright Office serves a vetting function by screening copyrights prior to litigation).  For example, by affording the Copyright Office a chance to say yay or nay prior to the commencement of an infringement action, the registration approach may give an accused infringer valuable information regarding how to proceed, i.e., whether to settle early or fight until the end.  Put another way, a copyright infringement plaintiff may rightly find it difficult to induce an accused infringer to settle infringement claims based on a copyright that the Copyright Office refused to register.  See 4-13 Nimmer on Copyright § 13.01 (recognizing that plaintiff's ownership of a valid copyright, which requires "originality in the author" and "copyrightability of the subject matter," among other things, is essential to the plaintiff's case in an infringement action).  We see some value in the registration approach's potential to reduce the frequency of coercive settlements of meritless copyright infringement claims.  See SBO Pictures, Inc. v. Does 1-3036, No. 11–4220, 2011 WL 6002620, at *3-4 (N.D. Cal. Nov. 30, 2011) (observing that "[t]he vast majority of these mass copyright infringement suits are resolved through settlement

once the plaintiff secures the information identifying the Does," and "plaintiffs appear[ed] content to force settlements without incurring any of the burdens involved in proving their cases.") (citations omitted).

In the end, perhaps the application approach makes more practical sense, perhaps not. Either way, our own policy views do not give us license to rewrite an unambiguous statute. See 1 The Law of Copyright § 10:8.90 (correctly noting that "considerations of judicial economy do not sanction misreading statutes..."). In enacting 17 U.S.C. § 411(a), Congress chose the registration approach, and we must abide by that decision.

Additionally, even if we were to adopt the application approach (we do not), Collins has not shown us that it submitted a complete application for "Asa Akira is Insatiable 2" to the Copyright Office. Under the application approach, "to bring a claim of infringement, a plaintiff must show that the Copyright Office received the following: (1) the copyright application, (2) the required number of copies of the work, and (3) the filing fee in proper form." Sungard Data Sys., Inc. v. Devlin, No. CIV.A. 95–3109, 1995 WL 447644, at *4 (E.D. Pa. July 28, 1995) (citation omitted). Here, Collins submitted a two (2) page printout purportedly evidencing his copyright application. (Doc. No. 1 Ex. B). However, nothing Collins provided indicates that Collins properly paid the filing fee or submitted the requisite number of copies of the work.

Finally, we note that Collins did not rely on its trademark infringement claims (Counts 3 and 4) to support its motion for leave to serve third party subpoenas on John Doe Defendants' ISPs. As such, we need not, and do not, address Collins' trademark claims in any detail at this time. However, we do note that "[f]or infringement of federally registered marks, what the Lanham Act requires is that the accused use be 'in connection with the sale, offering for sale,

distribution or advertising of any goods or services' in a context that is likely to cause confusion, mistake or deception."  4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11.50 (4th ed. 2011).  Further, the accused use must constitute a "use in commerce" for a trademark infringement action to lie.  See 15 U.S.C. § 1114(1).

Here, Plaintiff's complaint baldly asserts that each of Defendant's unauthorized uses of the PATRICK COLLINS and ELEGANT ANGEL marks will confuse consumers into purchasing Defendants' goods or services, mistakenly believing them to be Collins' goods and/or services.  (Doc. No. 1 ¶¶ 61-65).  However, the complaint lacks any specific factual allegations that John Doe Defendants sold, distributed, or advertised *any goods*, much less goods bearing Plaintiff's trademarks; or that Defendants have used Plaintiff's trademarks "in commerce."  Instead, the facts alleged in the complaint show, at most, that all twenty-six (26) John Doe Defendants participated in a BitTorrent swarm to obtain a copy of Plaintiff's movie.  We harbor some doubt that these facts, even if true, support a claim of trademark infringement.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not survive a motion to dismiss).  As such, Collins' trademark infringement claims do not give us good cause to permit Collins to subpoena John Doe Defendants' ISPs.

III. <u>Conclusion</u>

For the aforementioned reasons, Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (Doc. No. 4) is DENIED.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.